UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------ x
KHAN ET AL.,                                                 :
                                                             :
                        Plaintiffs,                          :
                                                             :
            v.                                               :   3:24-CV-01120 (SFR)
                                                             :
CITY OF HARTFORD ET AL.,                                     :
                                                             :
                        Defendants.                          :
------------------------------------------------------------ x
```

**MEMORANDUM & ORDER**

      Plaintiffs Maryam Khan, Sarah Khan, Jane Doe 1, Jane Doe 2, and John Doe bring this action against the City of Hartford and several employees of the Hartford Police Department ("HPD") asserting that they failed to appropriately respond to an attack against Maryam Khan as she was leaving an event at the XL Center in Hartford on June 28, 2023. The Amended Complaint asserts claims against the City of Hartford for constitutional violations pursuant to 42 U.S.C. § 1983 and for negligence and breach of contract under Connecticut law. In addition, the Amended Complaint asserts a claim under Title IX, 20 U.S.C. § 1681.[1] Defendants have moved to dismiss the Amended Complaint. For the reasons explained below, Defendants Motion is GRANTED in full, although Plaintiffs are afforded leave to file a Second Amended Complaint.

---

[1] It appears the Title IX claim is asserted against all Defendants. The Amended Complaint names Corey L. Clark, Gerald D. Morgan, and Rodney Harris but contains no details about the actions of any of these individuals. Although the Amended Complaint does not specify whether these individuals are being sued in their individual or official capacities, Defendants assert and Plaintiffs do not dispute that the suit is against Clark, Morgan, and Harris in their official capacities. Defs.' Mem. 1, ECF No. 22-1; Pls.' Mem. 9-10, ECF No. 25.

## I. BACKGROUND

### A. Factual Background

I accept the following allegations in the Amended Complaint as true for purposes of deciding Defendants' Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff Maryam Khan ("Khan") is a member of the Connecticut General Assembly. Am. Compl. ¶ 1, ECF No. 14. Khan is a Muslim woman and member of the Islamic Center of Connecticut ("Islamic Center"). *Id.* ¶ 52. On June 28, 2023, Khan attended Eid al-Adha services (the "event") in downtown Hartford at the XL Center. *Id.* ¶ 1. The XL Center is owned, operated, and otherwise under the direct control of the City of Hartford ("the City"). *Id.* ¶ 2. The event included about 1,500 attendees and was organized by The Islamic Center. *See id.* ¶¶ 48, 49. The Islamic Center contracted with the City to use the XL Center for the event. *Id.* ¶ 48. The contract included that the City would provide adequate security for the event including four uniformed officers and thirteen security guards. *Id.* ¶¶ 3, 49. Under the contract, the City was obligated to have one police officer inside the XL Center from 8am to 11am and three patrolling officers outside of the XL Center from 7:30am to 11:30am. *See id.* ¶¶ 62, 81.

After the event, Khan went outside the XL Center with her sister and her three minor children. *Id.* ¶¶ 7, 52, 53. While outside, Khan was approached by an individual later identified as Andrey Desmond. *Id.* ¶ 52. Desmond started harassing Khan and her family and threatened to sexually assault Khan in front of her family. *Id.* ¶ 53. After members of Khan's family moved inside, Desmond assaulted Khan just outside the XL Center entrance. *Id.* ¶ 55. Desmond slapped Khan's face and dragged her in a chokehold. *Id.* ¶¶ 55, 56. Desmond slammed Khan's body to the ground as a man tried to stop him. *Id.* ¶ 57. Desmond was finally pushed away by a good Samaritan. *Id.* ¶ 58. Khan sustained several injuries including a

concussion, persistent loss of sensation and numbness in her right shoulder and arm, and several bruises and cuts on her face and body. *Id.* ¶ 59. She also suffered severe emotional distress from the "physical assault and attempted sexual assault and continues to seek treatment" for this distress. *Id.* ¶ 60.

As attendees were leaving the arena, there were no police officers or private security guards employed by the XL Center patrolling the area. *Id.* ¶¶ 6, 83. Defendants removed officers from outside the XL Center prior to 11am. *Id.* ¶ 82. While Khan was being attacked, police did not respond for several minutes. *See id.* ¶ 62. Upon their arrival, the police had Khan, despite her injuries, walk several blocks to where her attacker was so she could identify him. *Id.* ¶ 63. This was done instead of allowing Khan to tend to her injuries and identify her attacker without him seeing her. *Id.* While on the scene, the police requested information from Khan, which she provided, describing in detail the sexual assault and physical attack on her by Desmond. *Id.* ¶ 64. However, the officers "failed to detail any recount of her sexual assault in their police report." *Id.* ¶ 65. Later, the incident was covered by national news outlets and the Hartford Police Department ("HPD") provided the police report to media before Khan received a copy. *Id.* ¶ 66. According to the Amended Complaint, the HPD provided "biased and skewed information" to the media. *Id.* ¶ 25. The Amended Complaint states the police report "completely ignored" Khan's report of sexual assault focusing more on the actions of the good Samaritan who assisted Khan—portraying him as an assailant. *Id.* ¶ 67.

Khan confronted the Chief of the HPD regarding the police report. The Police Chief "defended" that this was the normal way of completing a report and did not agree that the information regarding the sexual assault was necessary. *Id.* ¶¶ 23, 69. When Khan asked that the police report be corrected, the Police Chief stated the report was correct as is. *Id.* ¶ 23.

Khan then spoke with the prosecutor who only then considered sexual assault charges. *Id.* ¶ 70.

The Amended Complaint alleges the HPD "discounted" Khan's injuries and reports of sexual assault, *id.* ¶ 71, and it is "a custom of HPD to mistreat female victims of serious attacks, failing to properly treat them after being attacked," *id.* ¶ 77. In addition, "[i]t is a custom of HPD to discriminate against individuals of the Muslim religion, such as Plaintiff Khan" and "[i]n many instances of conduct by the HPD, they have treated individuals of the Muslim faith to a much lesser degree than [] individuals of other religions and faiths." *Id.* ¶¶ 75-76. The Amended Complaint also asserts: "[u]pon information and belief, Hartford police has a history of mistreating women of color, including women of the Muslim faith," "[l]ike with Plaintiff Khan, HPD treats women of color differently than other individuals who are victims of violent crimes," and the HPD's actions with respect to Khan were "[u]pon information and belief, a part of the systematic pattern of discrimination by HPD against women of color." *Id.* ¶¶ 26-28. Finally, the Amended Complaint asserts that "[s]ince Plaintiff Khan has come forward to express her concern of HPD's behavior and egregious acts, multiple women of color have come forward to tell their experiences of mistreatment from the HPD when they were victims of crimes, including assaults and violent rape." *Id.* ¶ 28.

### B. Procedural History

This action was filed June 27, 2024. Compl., ECF No. 1. On August 12, 2024, Khan amended her complaint. Am. Compl., ECF No. 14. On October 25, 2024, Defendants moved to dismiss the Amended Complaint. Mot. Dismiss, ECF No. 22. Plaintiffs filed a response on December 4, 2024. ECF No. 25. Defendants filed a reply on December 12, 2024. ECF No. 26.

This case was transferred to me on January 6, 2025. ECF No. 27. I heard oral argument regarding the Defendants' Motion to Dismiss on August 28, 2025. ECF No. 32.

## II. **LEGAL STANDARD**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of cause of action's elements will not do.") (citations omitted). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 358-59 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a

motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

### A.    Count One: § 1983 Claim

In Count One of the Amended Complaint, Khan asserts a claim pursuant to 42 U.S.C. § 1983 against the City of Hartford.[2] Defendants argue that Khan does not adequately allege an underlying constitutional violation and, in any event, fails to plausibly allege that any such violation was the result of a municipal policy, practice, or custom. Defs.' Mem. 6-8. Plaintiffs respond that Khan asserts violations of equal protection and substantive due process rights and adequately pleads a custom or practice by alleging that multiple other women have faced the "same mistreatment at the hands of the HPD." Pl.'s Mem. 9.

Section 1983 provides:

---

[2] The header to Count One in the Amended Complaint states that the claim is brought by Maryam Khan against "Defendants City and HPD." However, as Plaintiffs acknowledge, HPD (Hartford Police Department) has not been named as a Defendant in this action. Pl.'s Mem. 10, ECF No. 25.

6

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights." *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) (internal quotation marks and citation omitted).

The standard established by the Supreme Court in *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), governs § 1983 claims against municipalities. The Court in *Monell* determined that municipalities are "persons" within the meaning of § 1983 and the statute requires a causal connection between the actions of the municipality itself and the alleged constitutional violation. *See id.* at 691-92. Accordingly, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. A "municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691 (emphasis in original). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694; *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 124-25 (2d Cir. 2004) ("Demonstrating that the municipality itself caused or is implicated in the constitutional

violation is the touchstone of establishing that a municipality can be held liable for unconstitutional actions taken by municipal employees.").

A plaintiff may demonstrate a government "policy or custom" by alleging "the existence of (1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Gomez v. City of Norwalk*, No. 3:15-CV-01434 (MPS), 2017 WL 3033322, at *3 (D. Conn. July 17, 2017) (internal quotation marks omitted); *accord Jenkins v. City of Hartford*, No. 3:22-CV-01289 (KAD), 2024 WL 1157342, at *4 (D. Conn. Mar. 18, 2024). Under *Monell*, a municipality can face suit under § 1983 only if its "failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). "A *Monell* claim cannot succeed without an independent constitutional violation." *Anilao v. Spota*, 27 F.4th 855, 874 (2d Cir. 2022).

Here, Khan asserts a substantive due process violation based on the HPD's failure to protect her from attack and an equal protection violation based on the HPD's investigation following the event on June 28, 2023.[3] Plaintiffs do not argue that Khan's injury resulted from a formal policy of the City or failure to properly train or supervise. Instead, Plaintiffs argue

---

[3] Plaintiffs argue that the substantive due process violation underlying Count One is based on the HPD's failure to protect Khan from attack. Pl.'s Mem. 8-9. Plaintiffs argue that the contract between the Islamic Center and the City created a special relationship between the City and event attendees, giving rise to a constitutional duty to provide protection. *Id.* at 9.

8

that the Amended Complaint alleges "the HPD does in fact have a custom of discrimination against those similarly situated to M. Khan." Pl.'s Mem. 11. Plaintiffs point to an allegation in the Amended Complaint that "multiple women of color have come forward to tell their experiences of mistreatment from the HPD when they were victims of crimes, including assaults and violent rape." Am. Compl. ¶ 28; Pl.'s Mem. 11-12. According to Plaintiffs, "[t]hese facts, when proven, establish a custom of mistreatment by the HPD and an indifference to a group of individuals based on general and religious practice and belief." *Id.* at 12.

To establish a custom for purposes of *Monell* liability, a Plaintiff must show "a practice so persistent and widespread that it . . . implies the constructive knowledge of policymakers." *Gomez*, 2017 WL 3033322, at *3; *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions."); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992) ("So long as the discriminatory practices of city officials are persistent and widespread, they could be so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability.") (internal quotation marks and citation omitted).

Plaintiffs have not plausibly alleged the existence of a "custom" for purposes of maintaining a claim against the City for an equal protection or substantive due process violation under § 1983. The allegations in the Amended Complaint are conclusory and simply state a legal conclusion that HPD has a custom of mistreating women and discriminating against people of the Muslim faith. *See* Am. Compl. ¶¶ 26-29, 75-77. Although the Amended

9

Complaint asserts that other women of color who are victims of violent crime have experienced mistreatment by the HPD, the complaint provides no specific information about these other instances of mistreatment. The Amended Complaint does not allege facts indicating that discriminatory treatment was so persistent and widespread prior to the events at issue in this case that constructive knowledge of policymakers can be implied. A "*Monell* claim cannot survive a motion to dismiss if it relies on conclusory allegations that a municipal policy, custom or practice exists." *Gomez*, 2017 WL 3033322, at *3; *Masciotta v. Clarkstown Cent. Sch. Dist.*, 136 F. Supp. 3d 527, 546 (S.D.N.Y. 2015) ("[T]o survive a motion to dismiss, Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."). Here, the Amended Complaint fails to provide sufficient detail to state a plausible claim for the City's liability under *Monell*. *See, e.g.*, *Parlato v. Town of E. Haven*, No. 3:22-CV-1094 (SVN), 2023 WL 5206873, at *15 (D. Conn. Aug. 14, 2023) ("This threadbare suggestion that female firefighters were subject to greater scrutiny is insufficient to demonstrate a municipal policy or custom of gender discrimination."); *Gomez*, 2017 WL 3033322, at *4 (concluding that the complaint's "allegations, without more factual detail, are insufficient to withstand a motion to dismiss because they fail to provide any basis to infer which City policies or practices led to the alleged unconstitutional conduct"); *Iqbal*, 556 U.S. at 678 (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").[4]

---

[4] Plaintiffs also cite to *Cintron v. Vaughn*, 3:69-CV-13578 (KAD) (D. Conn.), which they say resulted in a "consent decree" arising from a civil rights lawsuit filed in 1969 against the City accusing the City of misconduct against Hartford citizens based on their race and ethnicity. Pl.'s

At oral argument, Plaintiffs suggested that Khan's direct interaction with the Police Chief supports liability for the City under *Monell*. A municipal officer subjects a municipality to § 1983 liability where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986). Plaintiffs have waived the argument that *Monell* liability exists based on the Police Chief's action as a final policymaker by not briefing this argument. *See* D. Conn. L. Civ. R. 56(a)2 ("A party shall be deemed to have waived any argument in support of an objection that such party does not include in its memorandum of law."); *Rivera v. Convoy, Inc.*, No. 3:23-CV-01353 (SVN), 2025 WL 2098129, at *11 (D. Conn. July 25, 2025) (stating that court cannot accept certain arguments belatedly raised by plaintiff because they were not fairly raised in the original briefing on the motions); *see also Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) (finding that an argument not raised by a plaintiff his opposition to the defendant's summary judgment motion was waived). However, while waiver is an independent basis for rejecting this argument, I also reject the argument on the merits.

---

Mem. 9. Plaintiffs observe that the "consent decree" was just lifted in April 2023, shortly before the events as issue in the present lawsuit. *Id*. Yet *Cintron*—filed more than 50 years ago—does not provide evidence of any ongoing discriminatory practices or customs of the HPD. Indeed, Judge Dooley recently rejected reliance on the *Cintron* case as establishing a custom of excessive force against people of color by the HPD. *See Jenkins v. City of Hartford*, No. 3:22-CV-01289 (KAD), 2024 WL 1157342, at *5 (D. Conn. Mar. 18, 2024) (noting that *Citron* litigation resolved with a settlement agreement in 1973 and the court was not aware of any judicial findings at that time that the HPD engaged in a pattern or practice of using excessive force against people of color; stating also that "allegations that HPD officers used excessive force against people of color over 50 years ago do not support a finding that in 2021, the HPD had a practice, custom or policy of using excessive force against people of color" and, "as of the date of the so-called Consent Decree, it was the policy of the HPD not to use excessive force").

The Amended Complaint asserts that when Khan confronted the Police Chief about the content of the police report, he stated it was a normal way of completing a report and disagreed that the information on the sexual assault was necessary. Am. Compl. ¶ 23. According to the Amended Complaint's allegations, the Police Chief declined to correct the report upon Khan's request stating that it was correct as it was. *Id*. These allegations relating to the Police Chief do not state a claim for a constitutional violation. A claim for failure to conduct a police investigation in a particular manner is not cognizable under § 1983. "[C]ourts have consistently declined to find that crime victims or those close to them possess a constitutional right to a police investigation into those crimes." *Harris v. City of New York*, No. 23-CV-6344 (VSB), 2023 WL 6542019, at *2 (S.D.N.Y. Sept. 11, 2023), *reconsideration denied*, No. 23-CV-6344 (VSB), 2023 WL 7474419 (S.D.N.Y. Oct. 12, 2023); *Buari v. City of New York*, 530 F. Supp. 3d 356, 391 (S.D.N.Y. 2021) ("Because there is no constitutional right to an adequate investigation, and therefore a claim for failure to investigate is not independently cognizable under Section 1983, the Court dismisses [plaintiff's] claim for failure to conduct an adequate investigation.") (collecting cases); *see also Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 36 (2d Cir. 2010) (concluding, even where plaintiffs "alleged serious lapses in a police investigation of a fatal traffic accident," plaintiffs did not state a claim for a constitutional violation as although the "allegations, if true, are troubling, not all wrongs committed by state actors rise to the level of a deprivation of rights that can be remedied under 42 U.S.C. § 1983"). Moreover, Khan does not allege that the Police Chief himself acted in a discriminatory manner in declining to correct the police report—or that he had reason to believe that the author or authors of the report were engaging in unlawful discrimination.

Accordingly, the Amended Complaint fails to plausibly state a claim against the City for a constitutional violation pursuant to 42 U.S.C. § 1983.

### B. Count Four: Title IX Claim

In Count Four of the Amended Complaint, Plaintiffs assert a claim pursuant to Title IX, 20 U.S.C. § 1681. Count Four asserts that Khan's "report of sexual assault to HPD [was] not investigated properly, not documented properly, and did not result in charges filed by and/or sent to the prosecutor" and she was "denied the benefit of an educational program or activity engaged in by the Hartford Police Department pursuant to federal funding." Am. Compl. ¶¶ 100-01. The Amended Complaint alleges that the City and the HPD receive federal funding, *id.* ¶ 98, and states that the City receives federal funding from the Justice Department's Comprehensive Strategy for Reducing Violent Crime through the Office of Community Oriented Policing Services, among other grant programs, *id.* ¶ 5. Defendants argue that that the Amended Complaint is "devoid of allegations that the City of Hartford and its Police Department is an educational institution or has any educational features." Defs.' Mem. 12 (internal quotation marks omitted). Plaintiffs respond by arguing that "the City is an educational institution because the City runs the Hartford Public School District and is subject to Title IX." Pl.'s Mem. 17.

Title IX states "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Second Circuit in *O'Connor v. Davis*, 126 F.3d 112 (2d Cir. 1997), stressed that in "order to implicate Title IX in the first instance, an entity must have features such that one could reasonably consider its mission to be, at least in part, educational." *Id.* at 117.

In determining whether a program is subject to Title IX, courts consider "[t]he structure of the program, including the involvement of instructors and inclusion of examinations or formal evaluations; whether tuition is required; the benefits conferred through the program, such as degrees, diplomas, or other certifications; the primary purpose of the program; and whether regulators accrediting the institution hold it out as educational in nature." *Zhornitsky v. Yale Sch. of Med.*, No. 3:24-CV-00018 (KAD), 2024 WL 4880695, at *5 (D. Conn. Nov. 25, 2024) (internal quotation marks omitted) (dismissing Title IX claim against the Connecticut Mental Health Center, CMHC, where the "Complaint does not allege that CMHC's mission is educational or that CMHC has any connection to Yale's educational operations" nor "allege that CMHC performed any educational activities: accepted tuition, hired teachers, or conferred any sort of certification on people"); *O'Connor*, 126 F.3d at 118 ("Not only is Rockland's internship program not classifiable as a vocational program, Rockland also cannot be said more generally to operate an 'education program' because the institution maintains none of the characteristics associated with being an educator.").

The Amended Complaint states that Khan was "denied the benefits of an educational program or activity engaged in by the Hartford Police Department" but describes no *educational* features of the HPD or how Khan was denied the benefit of an *educational* program or activity. Like the complaint in *Zhornitsky*, the Amended Complaint is devoid of any allegation that the HPD's mission is educational or that the HPD "performed any educational activities, accepted tuition, hired teachers, or conferred any sort of certification on people." *Zhornitsky*, 2024 WL 4880695, at *5; *see also Romero v. City of New York*, 839 F. Supp. 2d 588, 615 (E.D.N.Y. 2012) ("The limited connection that SCI has to education is that

it investigates wrongdoing by NYCDOE employees, which is insufficient to support a finding that its mission is, at least in part, educational.").

Although the Amended Complaint does not allege that the City as a whole is an educational program, Plaintiffs' Opposition argues that "the City is an educational institution because the City runs the Hartford Public School District and is subject to Title IX." Pl.'s Mem. 17. But for purposes of Title IX liability, the relevant question is whether plaintiff has been, on the basis of sex, excluded from participation in, denied the benefits of, or subjected to discrimination "under any education program or activity." 20 U.S.C. § 1681(a). The Amended Complaint relates to conduct of the HPD, not the Hartford Public School District. The Amended Complaint has not plausibly alleged that Khan, in her interactions with the HPD, was denied the benefits of an educational program or activity. *See Rule v. Braiman*, No. 1:23-CV-01218 (BKS/CFH), 2024 WL 4042135, at *9 (N.D.N.Y. Sept. 4, 2024) (dismissing Title IX claim based on conduct of doctor at Glen Falls Hospital because "the Amended Complaint is devoid of allegations that the Glens Falls Hospital has any educational 'features,' or that Glens Falls Hospital has any connection to the educational component of Albany Med beyond being owned by Albany Med"); *Glaser v. Upright Citizens Brigade LLC*, No. 18-CV-971 (JPO), 2020 WL 1529309, at *4 (S.D.N.Y. Mar. 31, 2020) (concluding that for Title IX liability, plaintiff "must show not only that Defendants offered an educational program, but also that he was excluded from or denied the benefits of that specific program"); *Romero v. City of New York*, 839 F. Supp. 2d 588, 614 (E.D.N.Y. 2012) ("Simply because the City receives federal funding and operates educational programs or activities does not mandate a finding that all of its various departments, like the DOI, and the subdivisions of those

15

departments, like SCI, are subject to Title IX. Rather, Title IX protects students and employees of educational programs that receive federal funding and are operated by the City.").[5]

Accordingly, the Amended Complaint does not plausibly allege that Khan was denied the benefits of an "education program or activity" on the basis of sex. *See* 20 U.S.C. § 1681(a). Therefore, her Title IX claim is dismissed.

### C. State Law Claims

As discussed above, Plaintiffs' federal claims are dismissed. With no federal claims remaining at this early stage in this case, I decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

### D. Leave to Amend

A court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow

---

[5] *O'Connor* relied on a Senate Report accompanying the 1988 amendments, which provided:

> If a private hospital corporation is extended federal assistance for its emergency rooms, the pediatrics department, admissions, discharge offices, etc., are covered under Title VI, section 504, and the Age Discrimination Act. *Since Title IX is limited to education programs or activities, it would only apply to the students and employees of educational programs operated by the hospital, if any.*

*O'Connor*, 126 F.3d at 118 (quoting S. Rep. No. 100-64, at 18 (1988)) (emphasis added).

leave to replead."); *Chipkin v. Better Packages, Inc.*, No. 3:24-CV-1435 (SVN), 2025 WL 2319994, at *6 (D. Conn. Aug. 12, 2025) (stating that "because it is possible that Plaintiff could replead his [claims] with further details . . . the Court will permit Plaintiff leave to file an amended complaint"). Accordingly, Plaintiffs are granted leave to file a Second Amended Complaint to remedy the deficiencies identified in this order.

## IV.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**. The Amended Complaint is dismissed in its entirety. Plaintiffs may file a Second Amended Complaint on or before October 3, 2025 to remedy the deficiencies identified in this order. If Plaintiffs do not file a Second Amended Complaint by that date, the case will be closed.

**SO ORDERED.**

New Haven, Connecticut
September 2, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge